IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRICK HERRINGTON,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>A.K. SCRIBNER, et al.,<br><br>　　　　　Defendants. | No. CV-F-05-624 OWW/GSA P<br><br>MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL (Doc. 145) |

On August 12, 2009, Plaintiff Garrick Herrington, proceeding *in pro per*, filed a motion for new trial pursuant to Rule 59, Federal Rules of Civil Procedure following a jury trial in which the jury found against him on all his claims.

Plaintiff's action pursuant to 42 U.S.C. § 1983, claimed that, while incarcerated at California State Prison Corcoran, Defendants Fuhlrodt, Hicks, Lowden and Wood violated his Eighth Amendment rights arising from a fall on a wet floor that occurred during a lockdown on May 5, 2004, and that Defendants Poulos, Scribner and Yamamoto violated his right to equal protection by

1

placing him on lockdown status because of his race, although the curfew established the prison was on partial lockdown due to incidents of racial violence.  At trial, the Court granted Defendants Fuhlrodt, Lowden and Poulos' motion for judgment under Rule 50, Federal Rules of Civil Procedure, based on the absence of evidence as to these defendant  and entered judgment for these Defendants as a matter of law.  The jury returned a verdict in favor of Defendants Hicks, Scribner, Wood and Yamamoto and against Plaintiff.

A motion for new trial "may be granted to all or any of the parties and on all or part of the issues ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Rule 59(a), Federal Rules of Civil Procedure.  "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir.1990).  "A new trial may be ordered to correct manifest errors of law or fact, but 'the burden of showing harmful error rests on the party seeking the new trial.'" *Boston Scientific Corp. v. Johnson & Johnson*, 550 F.Supp.2d 1102, 1110 (N.D.Cal.2008).  "A motion for new trial may invoke the court's discretion insofar as it is based on claims that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to [the] party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence

or instructions to the jury.'" *Id.*, quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

Plaintiff asserts he is entitled to a new trial because the Court abused its discretion in denying his repeated requests for appointment of counsel to represent him in the prosecution of this action.

As was ruled repeatedly in this action, Plaintiff does not have a constitutional right to appointed counsel. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir.1997). The Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). *Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the Court may request the voluntary assistance of counsel pursuant to Section 1915(e)(1). *Rand*, 113 F.3d at 1525. Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases, by evaluating both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light to the complexity of the legal issues involved. *Id.*

At trial, Plaintiff proved himself to be intelligent, articulate, well-organized, and as a pro se advocate, the equal of many licensed attorneys who appear before the Court. The Court stated this on the record. He was able to present an opening statement, effectively questioned witnesses, moved exhibits into evidence, and gave a logical and persuasive closing

argument.  Plaintiff was not prejudiced by the absence of counsel.

Plaintiff's motion for a new trial on this ground is DENIED. As demonstrated at the trial, the issues were not complex and Plaintiff was well able to articulate his claims.  Because appointment of counsel is discretionary and the standard for abuse of discretion high, Plaintiff has not demonstrated that the Court's discretion was abused.  Further, Plaintiff makes no showing that voluntary counsel would have been available.

Plaintiff further asserts that he "requested that the Court grant the appointment of an impartial expert and an impartial industrial hygienist," but that this motion "was never addressed by the Court during the time the case was switched from one District Judge to another, then back again."  Plaintiff apparently refers to "Plaintiff's Request for Referral for Voluntary Counsel and/or Appointment of Experts" filed on July 21, 2009,  (Doc. 103), approximately one week before trial. District Judge O'Neill denied this motion on July 22, 2009 (Doc. 109), but did not address the request for appointment of expert witnesses.

Plaintiff's motion for new trial on this ground is DENIED. Plaintiff did not make this request until the eve of trial despite the fact that the case was pending for four years before the trial.  Nor is the court under a duty in a private civil action to appoint an expert.  Defendants did not call an expert.

Plaintiff contends he is entitled to a new trial because of

4

the Court's denial of Plaintiff's request for a continuance when Plaintiff's medication was not transported to the Court by prison officials.  Plaintiff asserts that on the first day of trial, July 28, 2009, after the jury was selected and dismissed by the Court for the mid-day break, Plaintiff requested a continuance of the trial until the following morning so that he might be taken back to the Fresno County Jail for his pain medication, which had not been transported with him.  Plaintiff had filed a "Motion for Order Directing Medication to Be Transported Court [sic] with Plaintiff" on July 29, 2009, the second day of trial.  Plaintiff asserts that the Court denied his request for continuance and then relied on the Deputy Attorney General representing the defendants to check with jail authorities to ascertan whether Plaintiff needed the pain medication.  The Deputy Attorney General spoke with the prison doctor who had prescribed Plaintiff's medication and informed the Court that the doctor stated that Plaintiff's missing his afternoon dosage would cause Plaintiff some physical discomfort, but would not affect Plaintiff's ability to think or concentrate.

Plaintiff asserts that it was error for the Court to rely on the Deputy Attorney General, "who would naturally seek an advantage," that the doctor had never examined Plaintiff or reviewed his case, that Plaintiff made clear that the medication was to be taken "as needed," and his examination of witnesses after the mid-day recess "was unfocused and ineffective because he was forced to suffer severe discomfort and pain."  This is a

categorical misrepresentation.  The court inquired whether Mr. Harrington needed his meds and whether he could proceed.  Plaintiff stated he could do so.  The Court ordered the DOC to obtain and provide Plaintiff his meds and the next day of trial Plaintiff confirmed HE HAD RECEIVED AND TAKEN HIS MEDS.  The subject was not mentioned again nor did Plaintiff ever say he was affected in any way that interfered with his trial presentation.

Plaintiff's motion for new trial on this ground is DENIED.  Plaintiff demonstrated no difficulty during the afternoon session on July 28, 2009 in presenting his case and, other than expressing that he had some discomfort in his back and legs, did not raise any further objection to continuing with the trial or that he could not focus or concentrate because of his pain.  Plaintiff has not shown that he was prejudiced by the denial of the continuance.

Plaintiff argues he is entitled to a new trial because of the Court's endorsement of the Deputy Attorney General's request that Plaintiff put on his prisoner witnesses first so that there would be no need for other transportation orders.  Plaintiff asserts:

> Although the Court made mention of not wanting to prejudice the Plaintiff's case, in the same sentence, the Court stated that it would be helpful if this were to occur.  Plaintiff felt unduly swayed to acquiesce to this request.
>
> At the time, Plaintiff had requested, and been denied, the earlier mentioned continuance and did not want to draw the ire of the Court.  However, many of the

6

> Defendants were eventually dismissed from the case because they were never tied to Plaintiff's claims. Plaintiff contends that he had planned to cross-examine all of the Defendants prior to calling any prisoner witnesses. However, in order to please the Court at the behest of the Deputy Attorney General, Plaintiff felt that he had no choice but too [sic] call prisoner witnesses well prior to the time he had planned to.

Plaintiff's motion for new trial on this ground is DENIED. The Deputy Attorney General asked the Court to inquire when Plaintiff intended to call inmate witnesses Applin and Piazza to the stand in order to avoid transportation of these witnesses on the second day of trial and the expense of transporting these witnesses. The Court advised Plaintiff that he could present his case any way he wanted to and that he could call his witnesses in any order he desired. Plaintiff did not call witness Piazza to the stand until the second day of trial. Plaintiff was not forced or coerced into calling his prisoner witnesses out of order and he demonstrates no specific prejudice to him as a result of his decision to call the prisoner witnesses first. Plaintiff was afforded the opportunity and did call witnesses in the order of his preference.

Plaintiff moves for a new trial on the ground that because he was precluded from cross-examining Defendants Scribner and Yamamoto about the E.O.P. program after Defendants' counsel had opened the door. Plaintiff asserts:

> At both re-directed examinations of these Defendants, counsel elicited testimony concerning an E.O.P. inmate who attempted murder on staff during the relevant time of

7

1  the case.  Plaintiff attempted to elicit on
    re-cross examination the fact that other
2  inmates fell under the same remedial plan,
    especially the inmate who was the initial
3  cause of the racially discriminatory lockdown
    leading to Plaintiff's injury, but was
4  prohibited by the Court.

5 Plaintiff contends that the Court's ruling was improper:

6  Plaintiff sought to elicit admissions by both
    of these Defendants that inmates are re-
7  classified from CCCMS, in the housing unit on
    the facility and re-classified as E.O.P.
8  frequently.  Specifically, Plaintiff sought
    to show that the Defendants' claims of
9  isolation on the part of the E.O.P. program
    was untrue and that it was merely a
10 classification of the Coleman v. Wilson
    remedial plan, which the entire facility was
11 classified for.

12 Plaintiff does not know whether or not the
    fact that this remedial plan is partially the
13 cause for this Court's federal 'takeover' of
    the prison medical and mental health programs
14 was the reason for prohibiting such
    questioning.  However, the limiting of such
15 caused prejudice to Plaintiff's case while
    giving the testimony an undue and artificial
16 veracity in the eyes of the jury.

17     As Defendants respond, the Court correctly ruled that

18 questions of Defendants Scribner and Yamamoto about the

19 classification of mental health (EOP and CCCMS) inmates was

20 irrelevant.  Plaintiff's claim against Defendants Scribner and

21 Yamamoto was for racial discrimination.  Plaintiff presented

22 evidence that Facility 3B, where Plaintiff was housed, was locked

23 down when a black inmate assaulted two officers in the visiting

24 room.  Plaintiff argued that the lockdown was discriminatory

25 because Facility 3B was not locked down when a Hispanic EOP

26 inmate attacked a correctional officer in another housing unit of

8

the same facility.  Yamamoto testified that Facility 3B was not locked down because of the EOP inmate's assault because the investigation revealed the Hispanic EOP inmate had a personal grudge against the specific correctional officer and that the assault was an isolated incident.  Yamamoto and Scribner also testified that EOP inmates, regardless of race, are usually returned to normal programs faster than general population inmates because of the mental health needs of the EOP inmates and because EOP inmates are usually determined not to be involved in conspiracies or riots.  Plaintiff sought to elicit testimony on re-cross examination about the different classifications of EOP and CCCMS inmates, where they were housed, and what yards they were allowed access to.  After the Deputy Attorney General objected on the grounds of relevance and beyond the scope of direct examination, Plaintiff did not explain the connection between the classifications and his race discrimination claim. In his motion for new trial, Plaintiff again fails to show how the classification of EOP inmates, application of *Coleman v. Wilson*, or the appointment of a federal receiver is relevant to his claim that Black inmates were treated differently from other inmates during the lockdown from March to July 2004.

     Plaintiff moves for a new trial on the ground that the Court's answers to the jury's question during deliberations were misleading.

     The jury sent the following question to the Court during deliberations:

> What is a 'serious risk of injury.'  Please define.
>
> Is the fact that the areas around all the showers are always wet, constituting a 'serious risk of injury'?

Plaintiff asserts that the Court searched the Westlaw database for the answer to the first question while stating to the parties that the second question was the jury's job.  After not finding any decisional authority defining a "serious risk of injury," the Court began to opine that the risk needed to be known.  Plaintiff argued that the Court's intent on instructing the jury that the officer had to have some heightened and specific knowledge would mislead the jury.  Plaintiff cited *Farmer v. Brennan*, 511 U.S. 825, 842 (1994), as stating the knowledge can be demonstrated by circumstantial evidence and that factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  Plaintiff asserts that evidence was presented that "the safe working practices of the Defendants specifically acknowledged that wet concrete floors are a substantial risk."  Plaintiff contends that the Court "assured Plaintiff that he would not give such supplemental instruction and would merely answer the jury's quesiton [sic]."   Plaintiff asserts:

> The Court began to instruct the jury concerning the prison officials & requisite need fro [sic] knowledge of the risk.  The Court stated several times that the official 'needed to know' that a substantial risk was present.  This instruction, while emphasizing that the prison official had to know, gave a legally incorrect heightened knowledge

> component to the case.  Subsequently, the
> Court's nonresponsive and misleading answer
> to the jury's question caused them to veer
> from the inferred debate of whether or not
> the condition complained of posed a
> 'substantial risk of injury.'
>
> At best the Court should have read the
> correct language of 'substantial risk of
> harm' to correct the 'serious risk of
> hazard,' and stated that this is what the
> jury was empaneled to decide alone.  The
> Court's personal view of some heightened
> component of knowledge by the prison official
> mislead [sic] the jury and caused sever [sic]
> prejudice to Plaintiff [sic] case.

Defendants argue that, because Plaintiff's oral motion for a new trial on this ground was denied, Plaintiff cannot again move for a new trial but must move for relief from judgment or order under Rule 60(b), Federal Rules of Civil Procedure.

However, a motion for new trial on the ground of instructional error is appropriate.  "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are ... bases for a new trial."  *Murphy v. City of Long Beach, supra*, 914 F.2d at 187.

Plaintiff's motion for new trial on this ground is DENIED. The jury's question did not, as Plaintiff contends, ask whether knowledge of a substantial risk could be imputed or inferred. The Court and counsel researched authorities to determine how "serious risk" had been defined by case law.  Neither the Court nor counsel located a case where "serious risk" was defined in the context of a physical condition on prison grounds.  Under the circumstances, the Court instructed the jury that it was for them

11

to determine whether the wet floor condition outside the shower stall where Plaintiff fell amounted to a "substantial risk of serious harm." The Court defined the terms "serious" and "substantial" from a dictionary. The Court never referred to "knowledge" or what knowledge had to be known or could be known by prison officials.

Further, Defendants assert there was no evidence that the wet floor outside the shower stall constituted a "substantial risk." Hicks testified at trial that he was familiar with the Code of Safe Practices identified in Plaintiff's Exhibit PX55. The Code of Safe Practices stated that floors and walkways were to be kept free of debris, water, and other slippery substances and that wet floor signs were to be posted when mopping or spills occurred. Defendants note that Plaintiff's Exhibit PX55 was not introduced into evidence and that Hicks merely testified as to his understanding of what the Code of Safe Practices meant. Hicks did not testify that the wet walkway created a substantial risk of harm. Therefore, Defendants argue, the Court properly allowed the jury to determine whether the wet walkway near the shower stall amounted to a "substantial risk of serious harm."

For the reasons stated:

Plaintiff's motion for a new trial is DENIED.

IT IS SO ORDERED.

Dated:   September 25, 2009            /s/ Oliver W. Wanger
                                       UNITED STATES DISTRICT JUDGE